UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MAPHI CARPENTER SONI,

         Plaintiff,

 - against –

AMERITAS LIFE INSURANCE CORP.,

         Defendant.
-------------------------------------------------------------------x

Civ. No. 21-cv-6272 (EK) (MMH)

AMENDED
<u>COMPLAINT</u>

   Plaintiff, MAPHI CARPENTER SONI, by her attorney, LAW OFFICES OF ERIC DINNOCENZO, as and for her Amended Complaint against the defendant, AMERITAS LIFE INSURANCE CORP., alleges at all material times as follows:

## **INTRODUCTION**

   1. The defendant incorrectly and prematurely terminated the universal life insurance policy on the life of Renuka Carpenter shortly before her death. The plaintiff, as the beneficiary of the policy, has commenced this lawsuit to recover the $500,000.00 death benefit she has wrongfully been denied. In lapsing the policy, the defendant violated New Jersey emergency COVID regulations that provided for an extended grace period for life insurance policies.

   2. Even if New York law applies, defendant violated New York Insurance Law §§ 3203 and 3211 as well as the policy provisions and the common law.

   3. The defendant acted wrongfully by (a) prematurely determining the policy had insufficient value; (b) failing to mail premium notices; (c) providing a shorter grace period than the required 61-days; (d) not including a correct due date or specifying the grace period and thus

1

issuing confusing misleading notices; and (e) seeking an incorrect premium greater than that actually due.

## PARTIES

4. At all relevant times, plaintiff Maphia Carpenter Soni was a citizen and resident of the County of Kings, State of New York.

5. Plaintiff Maphi Carpenter Soni is the daughter of Renuka Carpenter, who was the insured under the policy and who, for several years up to and including her death, was a citizen and resident of the County of Kings, State of New York.

6. Defendant Ameritas Life Insurance Corp. ("Ameritas") is an insurance company licensed or authorized to do business in the State of New York with its principal place of business located in the State of Nebraska.

7. At all relevant times, defendant has sold and/or serviced life insurance policies to customers and insureds who resided in the State of New York.

## FACTS

### Background of the Policy

8. On July 7, 2011, a Universal Life Insurance policy with policy number U00005407K and base policy amount of $500,000 was issued to plaintiffs. The policy permitted the owner to change the death benefit amount to a minimum of $50,000.

9. Specifically, the policy was issued to plaintiff Maphi Carpenter Soni as owner and Renuka Carpenter, who at the time was age 75, as insured. Plaintiff Maphi Carpenter Soni was designated as the sole beneficiary and continued to hold this status to the present day.

10. Upon information and belief, the policy was issued to Renuka Carpenter as insured when she was a resident of New Jersey and plaintiff (the owner) was a resident of New

York. Shortly after the policy was issued, Carpenter moved to New York and resided there until her death.

11. Upon information and belief, the policy was initially issued by defendant Acacia Life Insurance Company which then later merged with Ameritas, or otherwise that Ameritas took over the obligations for administered the policy.

12. Upon information and belief, at all relevant times, defendant was responsible for the collection of premiums, administration and maintenance of the policy, and payment of the death benefit.

13. The policy provided a "monthly minimum no-lapse premium" feature so that, if a monthly payment of at least $1,142.37 was made over a period of ten years from the policy date (July 7, 2011), the policy would be guaranteed not to lapse.

14. The policy had a "Planned Periodic Premium" of $1,600 per month. The policy allowed the owner to change the amount and/or frequency of the planned periodic premium. This amount is also referred to as a "Monthly Deduction" in the policy.

15. The policy had a Grace Period which stated, "On any *monthly date* when the *cash surrender value* is less than the *monthly deduction* for the next policy month, *you* will have a 61-day grace period to make a premium payment to continue this policy." The minimum premium to continue the policy would be the lesser of: (1) an amount equal to the "current *monthly deduction* plus the next two *monthly deductions*"; or (2) "the sum of the *monthly minimum no-lapse premiums* from the *policy date* to two months past the start date of the grace period" minus "the sum of premiums paid to date." The policy required defendants to "mail notice of this minimum premium … at the start of the 61-day grace period."

16. At some point after the policy date, the planned premium was changed to a quarterly basis in the amount of $4,800.

**The Policy Lapse**

17. Throughout the life of the policy, the plaintiffs made premium payments totaling $128,600.57. Now they have been left without a life insurance policy and defendants have unjustly retained all of this money.

18. On December 21, 2020, plaintiff Soni made a premium payment in the amount of $5,006.43. Plaintiff Soni made this premium payment by calling into Ameritas's customer service department.

19. The $5,006.43 payment amount was specifically requested by an Ameritas representative. There would be no other reason for plaintiffs to make a payment in such an odd amount.

20. Plaintiffs did not receive any subsequent premium notices from defendants.

21. On February 26, 2021, plaintiff Soni treated with her primary care physician and was found to be COVID-19 positive and was advised to quarantine for 14 days.

22. Further, plaintiff Soni's brother had a heart attack around the same time and had a four-vessel bypass surgery performed on April 29, 2021.

23. Nevertheless, despite undergoing much personal hardship during this time period, in April 2021, plaintiff Soni called Ameritas to make the next quarterly premium payment, knowing that the quarterly premium date was about due based on her earlier December 2020 payment.

24. When plaintiff Soni called Ameritas, she was told that the policy had lapsed and that it could only be reinstated with an application. This was false and incorrect information as

the policy was still within the grace period pursuant to New Jersey emergency COVID regulations. Following defendant's instruction, plaintiff submitted an application for life reinstatement for the policy.

25. In a June 24, 2021 letter to plaintiff Soni, defendants wrote: "We regret that we are unable to approve the reinstatement due to medical history. There is no coverage in effect under the above policy as a result of the application for Life Reinstatement dated May 2, 2021."

26. Defendants did not mail to plaintiffs, nor did plaintiffs receive from defendants, a premium notice, or any lapse or termination notice, at any time after making the December 21, 2020 premium payment.

27. Subsequently, after the reinstatement application was denied, plaintiffs obtained for the first time a copy of the notices allegedly sent to them in advance of the policy lapse or termination which are dated February 8, 2021 and March 9, 2021 and which they never actually received and thus were not mailed to them.

28. Defendants do not have proof of mailing of these notices.

**The February 8, 2021 Notice**

29. The first notice, dated February 8, 2021, is vague, unclear, and ambiguous. It states that "…. this policy will lapse unless the payment due is received. A check for the amount due should be received on or before Apr. 8, 2021 and mailed while the insured is alive."

30. This notice indicates that the payment due date was April 8, 2021 which would mean the policy grace period—during which the policy remained in force—would end 61 days later.

31. This notice only *suggests* with use of the word "should" that payment be received by April 8, 2021. It does not state that the policy would definitely lapse or terminate if payment

5

was not received by that date, as required by New York Insurance Law 3211(b)(2) ("shall terminate or lapse").

32. Further, although the February 8, 2021 notice indicates the policy "will lapse unless payment due is received," there is ambiguity when contrasted with the rest of the notice which states that payment "should be received on or before Apr. 8, 2021."

**March 9, 2021 Notice**

33. The second notice is dated March 9, 2021 and entitled "**FINAL NOTICE**." The notice states that, "Your policy will lapse unless payment is received on or before Apr. 8, 2021…" The amount due was $5,006.72 and the "due date" was April 8, 2021.

34. Again, this notice indicates the due date is April 8, 2021 and the grace period would expire 61 days later, or the notice was vague, confusing, unclear and ambiguous.

35. Both of the aforesaid notices were not mailed to plaintiffs.

36. Both notices incorrectly sought a payment of $5,006.72 which is greater than the amount required to keep the policy in force for three months in accord with the policy language and N.Y. Ins. Law 3203.

37. Both notices do not contain a correct due date and thus were misleading. As stated, the notices indicate that the actual due date when the policy would have insufficient value would be April 8, 2021, as that is the specified "due date," and consequently, it would be reasonably inferred that the 61-day grace period would begin after that date in which the policy would still remain in force. The notices do not specify that the grace period would end on April 8, 2021; rather, they indicate that is the "due date," and these are two different dates under the policy and New York Insurance Law 3211(b)(2).

*38.*     The notices failed to specify the correct due date *and* that payment must be made within the specified 61-grace period.  *The notices failed to even mention a grace period.*

39.     The plaintiff was entitled to a 61-day grace period.  If the policy had insufficient value as of February 8, 2021, as defendant claims, the end of the grace period would be April 10 which is a Saturday and thus pursuant to General Construction Law 25-a the grace period would have ended on April 13, 2021.[1]  The defendants failed to provide plaintiffs with an adequate grace period.  The defendant's notices mentioned above do not state there was insufficient value as of February 8, 2021 or that was the due date; rather, they indicate that April 8, 2021 was the due date.

40.     The defendant miscalculated the policy value and premiums due with the result that the policy prematurely lapsed.

41.     Defendant was careless and negligent by its acts and omissions set forth above.

42.     If defendant had not acted carelessly and negligently, or breached the policy terms and the law governing life insurance policies, the plaintiff would have paid the amounts due under the policy and it would have remained in force.  Specifically, when plaintiff called defendant in late-April 2021, plaintiff should have been able to pay the amount due and the policy would remain in effect.

43.     The insured died on October 18, 2021.

44.     Defendant incorrectly lapsed or terminated the policy based on non-payment of premium.

45.     It is an inequitable result for plaintiff to have suffered the insurance policy lapse.

---

[1] The incorrect grace period that plaintiff was given ended within plaintiff's quarantine period, but the proper and correct grace period would have expired after her quarantine was over.

46. Plaintiff has offered and is holding all of the required monies in order to make the policy paid up and current.

47. If defendant had not wrongfully lapsed the policy, premium payments would have been made—as they had been since the inception of the policy—and the death benefit would have been paid.

48. Plaintiff demands, and has been deprived of, a $500,000.00 death benefit under the policy.

## AS AND FOR A FIRST CAUSE OF ACTION – DECLARATORY RELIEF

49. Plaintiff incorporates the foregoing paragraphs as if they have been alleged herein.

50. Defendant has wrongfully terminated the policy and refused to pay the death benefit.

51. Plaintiff seeks a declaration of the rights and obligations of the parties by this Court in accordance with the applicable provisions of law relating to declaratory judgments.

52. Plaintiff seeks and is entitled to a declaratory judgment establishing that the policy did not lapse and that defendants are obligated to and must pay the death benefit to plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION: NEW JERSEY COVID LAW AND REGULATION

53. If New Jersey law applies, the policy was terminated in violation of the extended grace period enacted by the State of New Jersey in response to the COVID-19 pandemic.

54. On April 9, 2020, Governor Murphy signed Executive Order No. 123 which went into effect that day and which extended the grace period for life insurance policies to 90 days. The order observed that: "the strict enforcement of certain statutory provisions relating to insurance grace periods is detrimental to the public welfare."

55. Specifically, section 1(a) of the order provides: "All … life insurance companies, … shall not cancel during the emergency grace period any policy or contract as a result of

nonpayment as defined as follows … for a period of at least 90 days, during which period claims shall be paid without regard to prior nonpayment of premium by the policyholder."

56. Bulletin No. 20-16 from the Department of Banking and Insurance, signed on April 10, 2020, extends the grace period of life insurance policies to 90 days.

57. These governmental orders (previously referred to as emergency COVID regulations) apply to the subject policy and were in effect during the time period when defendant wrongfully asserted that the policy lapsed and when the reinstatement application was denied.

58. Defendant wrongfully cancelled the policy prior to the 90-day period within the emergency grace period and while the governmental orders remained in effect.

59. Further, upon information and belief, defendant failed to post information about the extended grace period on its website and failed to notify the plaintiff or insured about it in violation of Bulletin No. 20-16.

60. If defendant had complied with the governmental orders, it would have accepted payment of premium from plaintiff in or about late-April 2021 when she called and would not have required the plaintiff to go through the reinstatement process.

61. Thus, defendant wrongfully caused the policy to lapse and wrongfully has deprived plaintiff of and refused to pay the death benefit.

**AS AND FOR A THIRD CAUSE OF ACTION: INSURANCE LAW § 3211**

62. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

63. New York law requires that life insurance termination notices comply with Insurance Law § 3211.

64. The vague, inconsistent, and indefinite language contained in the premium notices failed to satisfy the requirements of Insurance Law § 3211.

65. The relevant notices sent were false, misleading, and not in compliance with the policy or Insurance Law § 3211.

66. Further, the defendant did not mail or send required termination or lapse notices to plaintiffs.

67. Defendant therefore did not properly cancel, terminate, or otherwise provide notice of policy obligations under the terms of the policy or in accordance with applicable laws, rules, and regulations, including Insurance Law § 3211.

68. Under the terms of Insurance Law § 3211, the policy could not be cancelled as of the date of this amended complaint and continuing into the future, and plaintiff has timely sought relief.

69. In light of the foregoing, the policy was not lapsed, cancelled or terminated, and the death benefit must be paid.

**AS AND FOR A FOURTH CAUSE OF ACTION: INSURANCE LAW § 3203**

70. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

71. Defendant failed to comply with Insurance Law § 3203.

72. Defendant's lapse or termination was invalid and the policy death benefit must be paid to plaintiff.

**AS AND FOR A FIFTH CAUSE OF ACTION: BREACH OF CONTRACT**

73. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

74. The insurance policy was a valid contract of insurance between the plaintiff and defendant, or alternatively plaintiff was a third-party beneficiary of the contract.

75. Defendant wrongfully lapsed or terminated the policy.

76. Defendant has breached the contract.

77. Plaintiff has suffered damages as a direct result of the breach of contract by her loss of the insurance coverage and the refusal of defendant to pay the death benefit to plaintiff.

## **JURY DEMAND**

78. Plaintiff demands a jury trial on all claims.

**WHEREFORE**, plaintiff demands a declaration that defendant wrongfully and prematurely lapsed the subject policy and that defendant is obligated to and must pay the death benefit to plaintiff, and a judgment against defendant in the amount of $500,000.00 plus interest, costs, and such further relief as the Court deems just and proper.

Date: New York, NY
November 12, 2021

Law Offices of Eric Dinnocenzo

By: *s/Eric Dinnocenzo*
Eric Dinnocenzo (ED 3430)
Attorney for Plaintiffs
469 Seventh Avenue
Suite 1215
New York, New York 10018
(212) 933-1675
eric@dinnocenzolaw.com