UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

MAPHI CARPENTER SONI,

                Plaintiff,　　　　**MEMORANDUM & ORDER**
                                21-CV-6272 (EK)(MMH)
        -against-

AMERITAS LIFE INSURANCE CORP.,

                Defendant.[1]

------------------------------------x
ERIC KOMITEE, United States District Judge:

Plaintiff Maphi Carpenter Soni held a universal life insurance policy on the life of her mother, Renuka Carpenter. Defendant Ameritas Life Insurance Corp. ("Ameritas") was the insurer on the policy. Soni claims that Ameritas prematurely terminated the policy in April 2021 — specifically, that the termination violated New Jersey Executive Order 123, which temporarily extended life insurance "grace periods" during the COVID-19 pandemic.

Ameritas responds that the policy was governed by New York, not New Jersey, law. The distinction is relevant because, while New York's governor also issued an executive order extending grace periods, that order expired prior to the

---

[1] The Clerk of Court is respectfully directed to amend the case caption to conform to the above, as the existing caption refers to several plaintiffs whose claims were voluntarily dismissed from the operative complaint.

policy's termination.  This case thus boils down, in substantial part, to the choice-of-law issue.

Soni also brings various common law and consumer-fraud claims related to an April 29, 2020 letter from Ameritas.  In that letter, the insurer stated that it would extend Soni's grace period to 90 days if she was experiencing a hardship related to the COVID-19 New Jersey state emergency.  Soni argues that, putting aside which state's grace period governed, Ameritas was bound by that offer.

Finally, Soni contends that Ameritas failed to comply with New York Insurance Law Section 3211's requirements for mailing premium notices to policyholders, and therefore that the policy remained in force when Carpenter passed away six months later.

The parties have now filed cross-motions for summary judgment.  For the following reasons, Ameritas's motion is granted.

**I.   Background**

**A.   Factual Background**

The following facts are drawn from the parties' Local Rule 56.1 statements and the exhibits appended to their summary judgment papers.  Unless otherwise noted, the facts discussed below are undisputed.

Soni is the owner and primary beneficiary of a life insurance policy issued by Acacia Life Insurance Company and later acquired by Ameritas.  Pl.'s Rule 56.1 Resp. ¶¶ 82-85, ECF No. 81-1.  The policy insured the life of Soni's mother, Renuka Carpenter, for $500,000.  *See* Initial Policy, ECF No. 80-7 ($250,000 policy issued June 23, 2011); Revised Policy, ECF No. 80-9 ($500,000 policy issued July 27, 2011).  Carpenter, Soni, and their insurance agent — Hemlata Parmar — signed the policy application in New Jersey, where Carpenter was purportedly living at the time.  *See* June 2, 2011 Application for Insurance 2, 7,[2] ECF No. 80-5.[3]  But Soni and Parmar, who were both based in Brooklyn, signed the policy delivery receipts in New York. Pl.'s Rule 56.1 Resp. ¶¶ 20, 50, 172; *see also* Pl.'s Resp. to Def.'s Reqs. for Admis. ¶¶ 4-5, 27, ECF No. 80-100.

The policy at issue is a flexible premium universal life insurance policy.  *See* Revised Policy 29.  Universal life policies allow policyholders to vary "the amount and frequency of premium payments depending on their insurance needs and ability to make these payments."  Pl.'s Rule 56.1 Resp. ¶ 86. So, although Soni initially elected a "planned periodic premium"

---

[2] Page numbers in citations to transcripts and briefs refer to internal pagination.  Page numbers in citations to all other record documents refer to ECF pagination.

[3] Ameritas has raised questions about Carpenter's residency.  For example, Carpenter filed a different life insurance application with Foresters Financial in June 2021, in which she identified Brooklyn, New York as her residence.  *See* Foresters Application Forms, ECF Nos. 80-38 to 80-39.

3

of $1,600 per month, *id.* ¶ 162, Ameritas later shifted her to a quarterly payment. *See id.* ¶ 188. And the policy afforded her protection in the event of non-payment: it would enter the 61-day grace period only if, on the "monthly date" — meaning "the same date each month as the policy date" — the cash surrender value of the policy was less than the next monthly deduction. *Id.* ¶ 167; Revised Policy 29 (emphasis omitted) (definitions section).

Ameritas last received a premium payment from Soni on December 24, 2020. *See* Def.'s Rule 56.1 Statement ¶ 196, ECF No. 80-1.[4] On February 7, 2021, Ameritas determined that the policy's cash value had become insufficient to cover the monthly deduction and initiated the 61-day grace period. Pl.'s Rule 56.1 Resp. ¶ 202. The next day, the company mailed a premium notice to Soni's Brooklyn address, stating that $5,006.72 was due by April 8, or else the policy would lapse. *See* ECF No. 80-17. Ameritas sent an additional, "final notice" on March 9. *See* ECF No. 80-18. When it did not receive payment, Ameritas determined that the policy had lapsed. *See* Notice of Termination, ECF No. 80-19.

---

[4] Soni does not explicitly concede this fact, but she and Ameritas are in accord (within a few cents) regarding the total amount she paid in premiums over the life of the policy. *See* Def.'s Rule 56.1 Resp. ¶ 22, ECF No. 76-2.

Soni contends that she never received either the February 8 premium notice or the March 9 final notice.  *See* Def.'s Resp. to Pl.'s Rule 56.1 Counterstatement ¶¶ 9-10, ECF No. 82-1.  On April 30, 2021, she called Ameritas, attempting to make a premium payment.  A client services representative told her that her policy had lapsed and explained how to apply for reinstatement.  Pl.'s Rule 56.1 Resp. ¶¶ 219-221; *see generally* Call Tr., ECF No. 91-2 (Ex. B).  Soni applied for reinstatement, but Ameritas denied the application based on Carpenter's medical history.  *See* Pl.'s Rule 56.1 Resp. ¶¶ 222, 225.

### B.   Legal Background

In March 2020, New York and New Jersey both declared state emergencies arising from the COVID-19 pandemic.  The governors of both states issued executive orders extending the mandatory grace period for life insurance policies to 90 days.  N.Y. Executive Order No. 202.13, ECF No. 80-104; N.J. Executive Order No. 123, ECF No. 80-107.  But while New York allowed its grace-period extension to expire in June 2020, *see* N.Y. Executive Order No. 202.38, ECF No. 106, New Jersey's extension remained in effect on the date that Soni's policy lapsed.  *See* N.J. Executive Order No. 235 (April 15, 2021 order extending all

5

New Jersey executive orders issued in response to the COVID-19 emergency).[5]

Soni argues that the policy on her mother's life never should have lapsed because New Jersey law entitled her to a 90-day grace period, and she tried to pay the policy premium within that period. She further contends that, even if New York law applies, Ameritas was still bound by its April 2020 letter, in which it offered to extend her grace period to 90 days in the event that she was experiencing hardship related to the COVID-19 pandemic. *See* Apr. 29, 2020 Ltr., ECF No. 75-5.

**C. Procedural Background**

Soni filed the operative complaint, ECF No. 33, on March 30, 2023, and Ameritas moved to dismiss. *See* ECF No. 37. At a March 13, 2024 status conference, the Court denied Ameritas' motion and ordered accelerated discovery on the choice-of-law and mailing issues. *See* Tr. 18:10-12, ECF No. 60. The parties were invited to file initial summary judgment motions addressing only those issues. *See id.* at 12:1-13:3.

---

[5] https://perma.cc/T7NR-NBR7. Ameritas argues that "New Jersey's COVID-19 emergency grace period extension provided a single 90-day extension which a policy owner could elect to begin on either May 1, 2020 or April 1, 2020." Br. in Supp. of Mot. of Ameritas for Summ. J. ("Def.'s First Mot.") 7 n.1, ECF No. 80-2. But that argument overreads the Department of Banking and Insurance's bulletin implementing Executive Order 123, ECF No. 80-108, and ignores that the state extended the executive order multiple times. *See* N.J. Stat. Ann. § 26:13-32 (West 2021) (instructing that Executive Order 123 "shall remain in effect until January 1, 2022").

Following limited discovery, the parties filed cross-motions for summary judgment in June 2025.  ECF Nos. 75, 80. The Court then heard oral argument on those motions.  *See* Minute entry dated January 23, 2026.  Because Soni moved for summary judgment on all claims, and not just the choice-of-law and mailing issues, the Court afforded Ameritas the opportunity to do the same.  *See* docket order dated Feb. 13, 2026; *see also* Br. in Supp. of Mot. of Ameritas for Summ. J. on Counts One, Two, and Five Through Ten of Pl.'s Second Am. Compl. ("Def.'s Second Mot."), ECF No. 91-1.[6]  The cross-motions for summary judgment have now been fully briefed.

## II.  Legal Standard

Summary judgment is appropriate when there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party*."  Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[7]  And "[a] fact is material if it might affect the outcome of the suit under governing law."  *Id.*

---

[6] Plaintiff's request for additional discovery, ECF No. 87, is denied. None of the specific categories of discovery Soni requests, *see* Pl.'s Feb. 9 Ltr. 2-3, ECF No. 88, would have any bearing on the Court's analysis of her breach-of-contract and other common-law claims.  *See infra.* pages 16-20.

[7] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

When resolving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017). The movant bears the burden of showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-movant would bear the burden of persuasion on a given issue at trial, the movant can satisfy its burden of production either by "submitting evidence that negates an essential element of the non-moving party's claim," or "demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

If the movant carries its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). If the nonmoving party fails to do so, the Court should grant summary judgment. In performing this analysis, the Court resolves all ambiguities and draws all inferences in favor of the nonmoving party. *E.g., Gallo v.*

8

*Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

### III. Discussion

**A.   Claim Under New Jersey COVID-19 Law (Count II)**

Soni frames her primary cause of action as one brought under "New Jersey COVID law and regulation."  Compl. 11, ECF No. 33.  Really, her claim is for breach of contract.  New Jersey Executive Order 123 extended the state's usual 60-day grace period requirement for universal life policies, *see* N.J. Admin. Code § 11:4-41.3(b)2.vi(2), to 90 days.  N.J. Executive Order No. 123, at 6.  And Section 17B:25-18.1 of the New Jersey Statutes provides that any life insurance policy that is not in compliance with the requirements of Title 17B or any regulations issued thereunder (which would include N.J. Admin. Code § 11:4-41.3) "shall be deemed to be in compliance."  N.J. Stat. Ann. § 17B:25-18.1 (West).  So, Soni effectively asks the Court to read the 90-day grace period into her policy, and conclude that she has plausibly alleged a breach on that basis.

But the parties dispute which state's law applies to the policy in the first place.  We hold that New York law governs, so Soni's cause of action under New Jersey insurance law is dismissed.[8]

---

[8] Soni argues that Ameritas waived this issue when, in a prior letter to the Court, it suggested that New Jersey law should apply.  *See* Pl.'s First

1.    No Choice-of-Law or Statutory Provision Dictates
      <u>Which State's Law Applies</u>

The parties variously argue that either the policy itself or New York Insurance Law dictates the choice of law. None of these arguments is meritorious.

First, Ameritas argues that the life insurance policy contains a choice-of-law provision, which dictates that New York law should apply. Def.'s First Mot. 4, ECF No. 80-2. But that provision reads: "CONFORMITY WITH LAWS. This policy is subject to the laws of the state in which this policy is delivered." Revised Policy 36. This is not a choice-of-law provision. The Second Circuit has reasoned, in examining a nearly identical provision, that "[i]f the parties intended this provision also to act as a choice-of-law clause, we would expect it to bear a title that indicated [that]. . . . We would also anticipate that the clause would name the chosen state . . . ." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 133 (2d Cir. 2018). The provision "is, instead, exactly what it is called in the policy: a conformity clause." *Id.* at 132. As such, it

---

Opp'n 15, ECF No. 81 (citing Def.'s Dec. 2, 2021 Ltr. 1, ECF No. 14). But Soni has also flipped positions on this issue. *See id.* 17 n.13 ("It was error when plaintiff stated in the initial complaint that '[t]he policy was sold, issued, and delivered in New York.' At the time it was filed, the plaintiff was still alive and lived in New York, so the undersigned wrongly assumed it was a New York policy."). More to the point, courts have held that parties are not bound by the arguments raised in their pre-motion letters. *See Penn v. N.Y. Methodist Hosp.*, 158 F. Supp. 3d 177, 181 n.2 (S.D.N.Y. 2016) (collecting cases), *aff'd*, 884 F.3d 416 (2d Cir. 2018).

"does not dictate which state's law applies in this matter." *Id.* at 135.

Soni argues, by contrast, that the policy reflects the parties' implicit choice of New Jersey law because it includes various New Jersey specific provisions and endorsements. *See* Pl.'s First Opp'n 15. But she only cites one case that applies New York choice-of-law rules: *Travelers Causality & Surety Co. v. Dormitory Authority*, No. 07-CV-6915, 2008 WL 4861910 (S.D.N.Y. Nov. 5, 2008). There, the policy "contain[ed] numerous New Jersey-specific additions." *Id.* at *4. Whereas here, the policy only contains one New Jersey-specific provision: "[w]e will include interest on the death benefit in accordance with New Jersey law." Revised Policy 31 (emphasis omitted). Otherwise, the only references to New Jersey are "NJ" markings on certain pages and various notices under state law — not contractual terms. Moreover, the court in *Travelers* did not find the New Jersey-specific provisions in the policy to be determinative; rather, it factored them into a broader choice-of-law analysis.

Finally, Ameritas contends that "New York Insurance Law § 3103(b)(1) mandates that the Policy 'shall be governed by the laws . . . of this state'" because it was delivered in New York. Def.'s First Mot. 5. Even assuming that Section 3103(b) concerns choice of law, rather than conformity, it still only

11

applies to "a policy of life . . . upon a person *resident* in" New York.  N.Y. Ins. Law § 3103(b)(1) (emphasis added).  And the policy application identifies Carpenter's residence as "Edison," a city in New Jersey.  *See* June 2, 2011 Application for Insurance 2.

2.    The Policy's Center of Gravity Is New York

Nonetheless, New York law governs under the center-of-gravity test.

"A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state" — here, New York.  *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012).  "Under the law of New York . . . the first step in a choice of law analysis is to determine whether an actual conflict exists . . . ."  *Id.* at 433.  An actual conflict exists in this case: as described above, both New York and New Jersey issued executive orders extending life insurance grace periods to 90 days during the COVID-19 pandemic.  But New York's extension had expired by April 2021, whereas New Jersey's had not.[9]  So, if New York law applies, Soni was only entitled to the 61-day grace period identified in her policy.

---

[9] Soni pleaded in the alternative, raising claims under both New Jersey and New York's COVID-19 laws and regulations.  Compl. ¶¶ 68-90.  But she has subsequently conceded that New York's grace period extension expired on July 6, 2020.  *See* Pl.'s First Opp'n 3.

12

When a conflict exists, "New York looks to the center of gravity of a contract to determine choice of law." *AEI Life LLC*, 892 F.3d at 135. Under the center-of-gravity test, "courts may consider a spectrum of significant contacts, including the place of contracting, the place[] of . . . performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Id.* But "[t]he two most important factors" are the place of contracting, meaning "the state in which the policy was negotiated, contracted, and signed," and the place of performance, meaning "the location where the premiums are billed and a claim on the policy is made." *Id.* at 135-36.

Here, the place of performance was clearly New York. Ameritas mailed the premium notices and annual statements for the policy to Soni's home in Brooklyn. Pl.'s Rule 56.1 Resp. ¶ 147. Soni paid the policy premiums from New York bank accounts. *Id.* ¶ 179. And, for what it may be worth, because Soni was the policy's primary beneficiary, she would have made any claim on it in New York. *Id.* ¶ 151.

The place of contracting, meanwhile, was likely New Jersey, since that is where Soni, Carpenter, and Parmar signed the insurance application. *See* June 2, 2011 Application for Insurance 7. Notably, though, Soni and Parmar signed the

13

delivery receipts for the initial and revised policies in New York.  *See* Pl.'s Rule 56.1 Resp. ¶¶ 160, 172.

Ultimately, the totality of the contacts point to New York as the policy's center of gravity.  The "place of signing . . . [does] not outweigh the significance of New York's various relationships with the policy," *AEI Life LLC*, 892 F.3d at 136 — namely, the state of performance and the domicile of the policyowner.  Nor does the fact that Acacia was licensed in New Jersey, rather than New York.  *See id.* at 135.  And those are the only two contacts that even arguably favor the application of New Jersey law.  Soni cites various internal documents in which Ameritas referred to the policy as having been issued in or for New Jersey.  *See, e.g.*, July 8, 2011 Email Thread, ECF No. 75-11.  But Soni has never explained what the state of issuance means (other than, perhaps, that the policy application was signed in New Jersey) or how it should factor into the choice-of-law factors described in *AEI Life LLC*.[10]

---

[10] It is unclear why Soni, Carpenter, and Parmar signed the policy application in New Jersey when Parmar was based in New York, delivered policies on both Soni and Carpenter's lives to Soni's home in Brooklyn, and "visit[ed] with" Carpenter there.  Pl.'s Rule 56.1 Resp. ¶¶ 50-55.  But Ameritas was only licensed in New Jersey, not New York.  And perhaps there was some sort of incentive for Parmar to sell Soni an Ameritas policy.

Interestingly, around six months prior, Foresters asked Parmar to explain why an application for Carpenter had been "signed in New Jersey [even though] the applicant resides in New York."  *See* Nov. 9, 2010 Email, ECF No. 80-89.  On the "non-residence sale declaration," Parmar stated that she "met them at the conference in New Jersey" and "had presented them the product in New Jersey."  ECF No. 80-90.  But Soni testified that she and her mother met Parmar through their church in Brooklyn.  *See* Soni Tr. 36:4-37:10, ECF No. 80-97.  Accordingly, it seems possible that some sales-related machination was afoot.

14

Soni correctly observes that the center-of-gravity approach "often results in the dispute being governed by the law of the state where the insured resided at the time the policy was applied for." *U.S. Bank Nat'l Ass'n v. Sun Life Assurance Co. of Can.*, No. 14-CV-4703, 2016 WL 8116141, at *11 (E.D.N.Y. Aug. 30, 2016) (collecting cases), *report and recommendation adopted*, 2017 WL 347449 (E.D.N.Y. Jan. 24, 2017). But those results generally obtain in cases where — as is typical — the insured and the policy owner are one and the same. When the insured is not the policyholder, courts have not treated the insured's residence as a particularly important contact. *See, e.g.*, *Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 06-CV-5743, 2010 WL 3825735, at *13 (S.D.N.Y. Sept. 30, 2010). That makes sense because it is the "domicile . . . of the *contracting* parties" that courts typically consider in the center-of-gravity analysis. *See AEI Life LLC*, 892 F.3d at 135 (emphasis added). And it is the owner, rather than the insured, who is the actual party to the life insurance contract. *See, e.g.*, Revised Policy 35 ("This policy is a legal contract that *you* [*i.e.*, the owner] have entered into with *us*." (emphasis in original)).

Soni invokes Restatement Section 192 for the proposition that the rights created under a life insurance policy are governed "by the local law of the state where the

15

insured was domiciled at the time the policy was applied for."
Restatement (Second) of Conflict of Laws § 192 (1971).  But the
Restatement merely underscores the point that the insured's
domicile is not an important choice-of-law factor when the
insured is not also the policyowner.  Section 192 "does not
apply to life insurance issued upon the life of someone other
than the applicant."  *Id.* cmt. a.  And Soni — as the policy
owner — was clearly the applicant.  *See* Revised Policy 3
("Please have the enclosed delivery receipt signed by the
applicant and agent . . . ."); *id.* at 60 (delivery receipt
showing Soni's signature); *see also U.S. Bank Nat'l Ass'n*, 2016
WL 8116141, at *14 (holding that Section 192 did not apply when
the applicant and owner were different people).

The policy's center of gravity is New York.  Because
New York's grace-period extension had already expired by April
2021, Soni was only entitled to the 61-day grace period in her
policy.  And that grace period ran before Soni called Ameritas
on April 30, attempting to make a premium payment.  Therefore,
Ameritas was entitled to terminate her policy.

**B.    Claims for Breach of Contract and Fraud (Counts V, VI, VII, IX, and X)**

Soni further contends that, even if New York law
governs the policy, Ameritas was still bound its representation
that it would "extend the grace period on [her] life or

16

disability insurance policy to 90 days" if she was "experiencing a hardship or having difficult paying [her] premium based on challenges arising from the COVID-19 New Jersey state emergency."  *See* Apr. 29, 2020 Ltr.  Soni claims that, by denying her the extension, Ameritas committed a breach of contract (Count V).  Alternatively, Soni brings claims for promissory estoppel (Count VI), bad faith (Count VII), fraud (Count IX), and negligent misrepresentation (Count X).[11]

Under New York law, choice-of-law analysis is conducted on a claim-by-claim basis.  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012).  But as to Soni's breach of contract, promissory estoppel, fraud, and negligent misrepresentation claims, neither party identifies a conflict between New York and New Jersey law.  So, New York law applies to those claims.  *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006) ("As there is no conflict, for practical reasons, that is, for ease of administrating the case, New York, as the forum state, would apply its law."); *see also Coraud LLC v. Kidville Franchise Co.*, 109 F. Supp. 3d 615, 618 n.1

---

[11] Soni also raises a "waiver" theory in her motion for summary judgment.  *See* Pl.'s Mot. 6-8.  But the Court is not aware of any such cause of action under either the laws of New York or New Jersey.  Rather, waiver is an affirmative defense.  *See, e.g.*, *Berger v. JetBlue Airways Corp.*, No. 22-CV-7374, 2024 WL 4107243, at *3 (E.D.N.Y. Sept. 6, 2024) ("Whether there is a contractual waiver of a plaintiff's legal rights is an affirmative defense under . . . New York law.").

(S.D.N.Y. 2015) (applying law of forum state when neither party identified a relevant conflict of law).

The parties do identify a conflict between New York and New Jersey law as regards Soni's bad-faith claim.  *See* Def.'s Second Mot. 21 (arguing that "a separate cause of action for bad faith insurance handling is not recognized in New York").  But, even if New Jersey law applies, that claim would fail because "there can be no bad faith claim if the insurance company can provide a reasonable basis for denying the insured the benefits under the contract."  *Procopio v. Gov't Emps. Ins. Co.*, 80 A.3d 749, 752 (N.J. Super. Ct. App. Div. 2013).  And here, Soni's grace period had run under the terms of her policy.

Turning to her remaining common-law claims, Soni's breach of contract claim does not survive summary judgment. Even assuming Ameritas's April 29, 2020 letter constituted a valid offer to either modify Soni's existing policy or form a new contract, Soni adduced no evidence from which a reasonable jury could infer that she *accepted* that offer.  *See Civ. Serv. Emps. Ass'n, Inc. v. Baldwin Union Free Sch. Dist.*, 924 N.Y.S.2d 126, 128 (App. Div. 2d Dep't 2011) ("To establish the existence of an enforceable agreement, there must be an offer, [and] acceptance of the offer . . . .").  Soni admits that she "does not recall receiving Ameritas' April 29, 2020 letter concerning the COVID-19 New Jersey state of emergency."  Pl.'s Resp. to

Def.'s Reqs. for Admis. ¶ 42. Needless to say, one cannot accept an offer that she has not received. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121 (2d Cir. 2012) ("As a general principle, an offeree cannot actually assent to an offer unless the offeree knows of its existence.").

And, importantly, the transcript of Soni's April 30, 2021 call with Ameritas reveals that she did not ask for the grace-period extension. Instead, she said she "would like to pay the policy." Call Tr. 3:3-4. When the client services representative told Soni that the policy had already lapsed, she simply asked the representative to "fax everything" related to reinstatement and to "put [the premium] on auto pay." *Id.* at 3:5-12.

Soni's claims for promissory estoppel, fraud, and negligent misrepresentation must similarly be dismissed because all three would require her to establish that she relied on Ameritas's representations in the April 29, 2020 letter. *See Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) ("A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."); *Water St. Leasehold LLC v. Deloitte & Touche LLP*, 796 N.Y.S.2d 598, 599 (App. Div. 1st Dep't 2005) ("An essential

19

element of any fraud or negligent misrepresentation claim is that there must be reasonable reliance, to a party's detriment, upon the representations made.").

Soni counters that she did rely on the April 29, 2020 letter, *see* Pl.'s Opp'n to Def.'s Second Mot. 22, ECF No. 92, pointing to a sworn declaration in which she states that "[i]t was [her] understanding that there was additional time . . . to make the payment due to the COVID-19 emergency and a letter sent to me by Ameritas early during the pandemic that was received by me at my home . . . extended the grace period to 90 days." Soni Decl. ¶ 7, ECF No. 75-7. But the only supporting evidence is her deposition testimony that she "believe[d]" she had received the letter at her home and "believe[d]" she "might have read it." Soni Tr. 81:19-82:10, ECF No. 80-97. "Might have" is not enough, especially in light of her much more direct admission that she does not recall receiving the letter, Pl.'s Resp. to Def.'s Reqs. for Admis. ¶ 42, and the contemporaneous transcript of her call with Ameritas. Accordingly, no reasonable jury could find in Soni's favor on this issue because she "relies almost exclusively on his own testimony, much of which is contradictory and incomplete." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

Counts V, VI, VII, IX, and X are dismissed.

**C.    Claim Under the New Jersey Consumer Fraud Act or New York General Business Law Section 349 (Count VIII)**

The complaint also alleges that Ameritas's refusal to adhere to its offer to extend Soni's grace period to 90 days violated either the New Jersey Consumer Fraud Act or New York General Business Law Section 349.  "Generally, consumer fraud cases are governed by the law of the state where the consumer resides."  *Mendy v. JP Morgan Chase & Co.*, No. 12-CV-8252, 2014 WL 1224549, at *7 (S.D.N.Y. Mar. 24, 2014) (collecting cases).  Since Soni is a New York resident, New York law also governs her consumer fraud claim.

But Soni has failed to defend her claim under New York General Business Law Section 349.  *See* Pl.'s Opp'n to Def.'s Second Mot. 24 (addressing only the N.J. Consumer Fraud Act); *see also* Pl.'s Mot. 21-23, ECF No. 75-2 (same).  And "when a counseled party moves for summary judgment, a partial response by the non-movant arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."  *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016).  Therefore, we deem Soni's Section 349 claim abandoned, and Ameritas is entitled to summary judgment thereon.

21

**D.    Claim Under New York Insurance Law § 3211 (Count III)[12]**

Soni also argues that (1) she did not receive a premium notice within thirty days of Ameritas's determination that the policy's cash value was insufficient, as required under New York Insurance Law Section 3211; and (2) even if she did, that notice was substantively deficient.  Both arguments fail.

In support of its contention that Soni received the required notice, Ameritas provided the sworn declaration of David Voelker, the Senior Vice President of Services and Operations for the Life Insurance Division.  *See* ECF No. 80-3. Under New York Insurance Law Section 3211(c), a sworn statement by an officer or agent showing that the requisite notice "has been duly addressed and mailed" constitutes "presumptive evidence that such notice has been duly given."  And New York courts have consistently found that proof of a standardized mailing practice is sufficient to establish this presumption. *See, e.g.*, *Nassau Ins. Co. v. Murray*, 386 N.E.2d 1085, 1086 (N.Y. 1978); *Matsil v. Utica First Ins. Co.*, 55 N.Y.S.3d 304, 305 (App. Div. 2d Dep't 2017).

The Voelker declaration details Ameritas's automated process for mailing premium notices: Whenever a policy enters the grace period, Ameritas's computer software system generates

---

[12] Soni consents to the dismissal of Count IV (N.Y. Insurance Law § 3202).  *See* Pl.'s Opp'n to Def.'s Second Mot. 17.

22

a premium notice and addresses it for mailing to the policy owner's last known address.  Voelker Decl.  ¶¶ 21-23, 26.  Once the notice has been printed, Ameritas's automated insertion equipment folds it and inserts it into an envelope with a clear glassine window, through which the owner's address is displayed. *Id.* ¶¶ 31-33.  The only human involvement in this process is in loading and operating the machines.  *Id.* ¶ 34.  Pitney Bowes picks up the filled envelopes, sorts them, and transfers them to USPS.  *Id.* ¶ 35.  Each notice has an individual barcode, and Ameritas and Pitney Bowes both maintain First Class Letter counts to ensure that each letter is accounted for.  *Id.*

The Voelker Declaration provides sufficient evidence to support Section 3211(c)'s presumption of mailing, and Soni has not rebutted that presumption.[13]  Merely asserting that she never received the notices is insufficient.  Rather, Soni must point to "evidence of a defect [that] casts doubt on the reliability of a key aspect of the process such that the

---

[13] In certain prior cases, this Court found that the presumption of mailing did not apply.  *See Correa v. New Eng. Life Ins. Co.*, 751 F. Supp. 3d 218, 227-29 (E.D.N.Y. 2024); *V.A. v. City of New York*, No. 20-CV-0989, 2022 WL 1469394, at *7-10 (E.D.N.Y. May 10, 2022).  But those cases are distinguishable.  In *Correa*, "the process [was] set up to generate known errors in addressing notices . . . and then to rectify those errors through discretionary human inputs."  751 F. Supp. 3d at 227.  And in *V.A.*, the defendant offered "no evidence about whether the address was verified, whether adequate postage was applied, or — critically — where, when, or by whom the letter was tendered to the Postal Service."  2022 WL 1469394, at *9. Instead, its representative "testified only that she printed and folded the letter, put it in an envelope, and put it in the mail."  *Id.*  The facts in this case are a world apart from those.

23

inference that the notice was properly prepared and mailed is significantly undermined." *CIT Bank N.A. v. Schiffman*, 168 N.E.3d 1138, 1143 (N.Y. 2021). She has failed to do so here.

Instead, Soni argues that (1) Voelker had insufficient personal knowledge of the mailing process because he admitted during his deposition that had not witnessed it in-person in five years, *see* Voelker Tr. 115:4-8, ECF No. 80-98, and (2) his follow-on declaration is a "sham affidavit." Pl.'s Opp'n to Def.'s First Mot. 3. Neither argument has merit.

Voelker attested to his personal knowledge of Ameritas's mailing procedures. *See* Voelker Decl. ¶ 2. He also described the basis for this knowledge: his "team oversees the acceptance and application of premium payments and . . . the accounting of policies," including by "ensuring that the required premium notices are properly addressed and duly mailed to policy owners." *Id.* ¶ 1. And he further "familiarized [himself] with the facts regarding Ameritas' standard operating procedures" in preparation for testifying as Ameritas's corporate representative. *Id.* ¶ 3. That he has not witnessed the mailing process in-person in several years is irrelevant. *See Katergaris v. City of New York*, No. 24-CV-1889, 2025 WL 1129197, at *2 (2d Cir. Apr. 15, 2025) (quoting *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985)) ("[A]n affiant can have personal knowledge of regular mailing procedures even if he

did not work in the mailroom . . . or personally do the mailing."); *cf. Thomas v. Midland Credit Mgmt., Inc.*, No. 17-CV-523, 2017 WL 5714722, at *10 (E.D.N.Y. Nov. 27, 2017) ("Sworn affidavits of corporate officers are sufficient proof of mailing" of a credit card agreement.); *Kernaghan v. Forster & Garbus*, LLP, No. 18-CV-204, 2019 WL 981640, at *4 (E.D.N.Y. Feb. 25, 2019) (collecting Fair Debt Collection Practices Act cases in which "affidavits of corporate representatives have been found to be sufficient to establish mailing").

As for the argument that Voelker's affidavit was a sham, "Rule 30(b)(6) testimony is not binding in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015). That is all Voelker did here: he supplemented his limited deposition testimony regarding Ameritas's mailing process via declaration.[14] Accordingly, Soni's arguments do not undermine the presumption of mailing.

Soni also argues that the February 8, 2021 premium notice was substantively deficient because it "confused the due date (February 7) with the end of the grace period (April 8)." Pl.'s Mot. 25. But for variable premium life insurance policies

---

[14] Notably, it was Soni's choice not to ask Voelker more questions about the mailing process during his deposition. *See* Voelker Tr. 114-22 (out of 126 pages).

like the one at issue here, New York Insurance Law Section 3211 defines the due date as the date on which the policy would lapse (*i.e.*, the end of the grace period).  If, as here, a life insurance policy:

> provides that the policyholder . . . may vary the amount and frequency of premiums to be paid to the insurer, premiums, installments and interest on loans will be considered *due on the day when* the failure of the insurer . . . to receive an amount of premium, installment or interest on loan would cause *such policy . . . to terminate or lapse*, and the failure to pay such amount shall be considered a default.

N.Y. Ins. Law § 3211(a)(2) (emphases added).  So, the premium notice comported with the statute.

**E.    Claim for Declaratory Relief (Count I)**

Finally, Soni brings a claim for declaratory relief. *See* Compl. ¶¶ 64-67.  The Declaratory Judgment Act does not "provide an independent cause of action."  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  And Soni does not identify any substantive basis for declaratory relief independent of her other claims.  Accordingly, Count I is dismissed as duplicative of Soni's other causes of action.  *See City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) ("Courts generally reject a DJA claim when other claims in the suit will resolve the same issues.").

## IV.  Conclusion

Ameritas's motion for summary judgment, ECF Nos. 80, 91, is granted in its entirety.  Soni's cross-motion for summary judgment, ECF No. 75, is denied.  The Clerk of Court is respectfully directed to issue judgment for Ameritas and close this case.


SO ORDERED.


                                    /s/ Eric Komitee
                                   ERIC KOMITEE
                                   United States District Judge


Dated:    June 4, 2026
          Brooklyn, New York